FILED '07 FEB 26 17:50 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JUDITH E. MAK,

        Plaintiff,

    v.

ASANTE dba ROGUE VALLEY
MEDICAL CENTER,

        Defendant.

Civil No. 05-1291-CO

FINDINGS AND RECOMMENDATION

COONEY, Magistrate Judge:

This action arises out of plaintiff's termination from employment with defendant. Plaintiff Judith E. Mak alleges claims for violation of the Family Leave Act under federal and state law, disability discrimination under state law, and wrongful discharge. Plaintiff seeks economic damages, compensatory damages, liquidated damages, punitive damages, and costs and attorney's fees. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Before the Court is defendant's motion for full or partial summary judgment (#37), which is opposed

by plaintiff.

## I.  **FACTS**

The Court makes the following findings of fact, considering the evidence in the light most favorable to the non-moving party:

Asante is an Oregon corporation doing business, in part, as Rogue Valley Medical Center ("RVMC" or "Asante"), located in Medford, Oregon. (Hartzell Decl. ¶ 3.)

Defendant Judith Mak ("Mak") registered patients in RVMC's Emergency Room.  She started working for Asante in 1992 and was terminated on November 15, 2004, for violating the attendance policy.  (Hartzell Decl. Ex. 1 J. Mak Dep Vol. I ("Mak Dep. I") 12:7–13:4; Hartzell Decl. Ex. 4 Mak Dep. Ex. 15; Hartzell Decl. Ex. 3 K. Mak Dep. 8:20–9:22; Freiheit Decl., ¶ 4.)

Mak was diagnosed with Hashimoto's disease in 1982. She effectively treated her condition for years with medication, and was open about her condition with her coworkers and supervisors.  (Hartzell Decl. Ex. 1 Mak Dep. I 17:11–21; 18:10-11; 18:12–19:19.)  Other than requesting FMLA/OFLA leave for surgery, Mak never asked for an accommodation for her Hashimoto's disease. (Hartzell Decl. Ex. 1 Mak Dep. I 15: 12–16, 20:6-17)

When her condition worsened, Mak took protected FMLA/OFLA leave in January 2004.  Mak did not require any prior FMLA/OFLA leave for her Hashimoto's

disease.  After her surgery, Mak returned to work and resumed her job duties full-time.  (Hartzell Decl. Ex. 1 Mak Dep. I 19:20–20:19.)

Plaintiff claims she is disabled due to her Hashimoto's.  (Oldham Decl. Ex. A Pl. Dep. Vol. I 17:11-18:6.)

Mak's husband, Keith Mak, was diagnosed with cancer in 2002. Mak took FMLA/OFLA leave that year to care for him.  (Hartzell Decl. Ex. 1 Mak Dep. I 54:14–55:24, 61:19–62:6; Hartzell Decl. Ex. 4 Mak Dep. Ex. 1.) When Mr. Mak returned to work in September 2002, he resumed a 40-hour, light duty work-week. He resumed his pre-leave job duties on or about July 19, 2004.  (Hartzell Decl. Ex. 3 K. Mak Dep. 14:9-20; Oldham Decl. Ex. C K. Mak Dep. 14:9-17; Oldham Decl. K. Mak Dep. Ex. 108.)

Mak's daughter, Alexandra Jones, was diagnosed at age nine with autoimmune hepatitis – a chronic condition that had been in remission for more than five years before Mak's termination.  (Hartzell Decl. Ex. 1 Mak Dep. I 74:25–76:17, 104:21-25; Hartzell Decl. Ex. 4 Mak Dep. Ex. 6.)  The medication she takes to protect her liver from being destroyed suppresses her immune system making her more vulnerable to illness. (Oldham Decl. Ex. A Pl. Dep. I 75:25–76:3, 213:15-214:2.)  Mak never applied for leave to care for her daughter until July 2004. (Hartzell Decl. Ex. 1 Mak Dep. I 74:25–76:17, 104:21-25; Hartzell Decl. Ex. 4 Mak Dep. Ex. 6.)  Mak never turned in a medical certification form for her

daughter.

Mak's mother, Helen Curliss, lived with Mak for 12 years.  (Hartzell Decl. Ex. 1 Mak Dep. I 160:18-19.)  Plaintiff's mother's medical history includes coronary artery disease, with triple bypass graft; hypertension; colon resection; and thyroidectomy.  (Sortun Decl. Ex. 1 (J. Mak Dep. Ex. 97)[1] at 6.)  When necessary, Mak's daughter assisted Ms. Curliss.  (Hartzell Decl. Ex. 3 K. Mak Dep. 26:23–27:2, 27:21–29:5.)  Due to a cat bite in 2004, Ms. Curliss was a patient at RVMC.  At that time, Ms. Curliss' doctor described her as an "89-year-old lady who is fully independent with the activities of daily living."  (Hartzell Decl. Ex. 1 Mak Dep. II 45:21–48:4; Sortun Decl. Ex. 1 (Mak Dep. Ex. 97)[2].)  Mak never applied for leave to care for her mother until July 2004.  (Hartzell Decl. Ex. 1 Mak Dep. I  88:20-22.)

Mak took FMLA/OFLA approved leave on four occasions between 2000 and 2004: for her own surgeries in 2000, 2001, and 2004; and in 2002, when her husband was treated for cancer.  (Hartzell Decl. Ex. 4 Mak Dep. Exs., 3, 4, 5, and 1, respectively.) On each occasion, Mak filled out the proper paperwork. (Seger Decl. ¶ 13; Freiheit Decl. ¶ 12.)  She never applied for intermittent leave before July 13, 2004. (Hartzell Decl. Ex. 1 Mak Dep. I 88:4-7.)

_____

[1]    The Sortun Declaration with attached Judith Mak April 11, 2006, deposition exhibit 97, was filed under seal.

[2]    See note 1.

Findings and Recommendation - Page 4

Mak was familiar with the FMLA/OFLA application process including the necessity of submitting a medical certification.  When she applied for FMLA/OFLA leave in July 2004, Mak understood she needed to obtain medical certification forms or her leave request would not be approved.  (Hartzell Decl. Ex. 1 Mak Dep.  I 53:12–56:22, 67:11–68:8, 69:7-10, 75:8-21; Hartzell Decl. Ex. 4 Exs. 6, 7; Seger Decl. ¶ 12.)

In support of her July 2004 FMLA/OFLA request, Mak turned in a letter from her health care provider, Patricia Hoyecki, LPN, dated July 6, 2004, (Oldham Decl. Ex. D Seger Dep. 66:8-67:7), stating that Mak "currently has no personal health related limitation of ability to participate in employment responsibilities," (Hartzell Decl. Ex. 4 Mak Dep. Ex. 8; Oldham Decl. K. Dep Ex. 8 (AHS 000012)).  The letter stated in pertinent part:

> Please note Ms. Judith Mak is receiving care for her multiple endocrine problems at our clinic.  Her current health challenges combined with current health challenges of her spouse, child and mother have placed increased stress on her work schedule.  She currently has no personal health related limitation of ability to participate in employment responsibilities.  Hopefully her family situation will stabilize soon she [sic] will not need to utilize intermittent personal leave from her work schedule to help provide the care they need.  Until then thank you in advance for facilitating her ability to help provide the health care support her dependents may require with minimal notice. . . .

(Hartzell Decl. Ex. 4 Mak Dep. Ex. 8; Oldham Decl. K. Dep Ex. 8 (AHS 000012).)

Defendant received the letter.  (Oldham Decl. Ex. D Seger Dep. 66:8-67:7; Oldham

Decl. K. Dep Exs. 6 (AHS 000011), 8 (AHS 000012).)  Mak's health care provider never treated any of Mak's relatives.

Asante has a no-fault attendance policy. If an employee accrues 10 unscheduled absences in a rolling 12-month period for any reason, including sickness, the employee will be terminated.  An unscheduled absence is defined as "any time away from scheduled work not authorized in advance by the management."  Vacation leave and approved FMLA/OFLA leave do not count for purposes of tracking unscheduled absences. (Hartzell Decl. Ex. 4 Mak Dep. Ex. 56; Seger ¶ 7; Freiheit Decl. ¶ 6.)

Mak admits familiarity with Asante's attendance policy to the extent of 10 absences were allowed in a 12-month period, (Hartzell Decl. Ex. 1 Mak Dep. I 42:10–43:8), but she didn't understand Asante's rolling attendance policy, (Oldham Decl. Ex. A J. Mak Dep. I at 42:19-23, 210:10-211:8, 211:24-212:11).  Mak admits attendance performance issues throughout her employment.  (Hartzell Decl. Ex. 1 Mak Dep. I 159:14–160:3, 163:17-164:1, 210:3–211: 2; Hartzell Decl. Ex. 4 Mak Dep. Exs. 9-13, 17-21, 23.)

Mak had been counseled about her attendance by supervisors Heather Freiheit and Carman De Los Santos, and had received written warnings.  (Hartzell Decl. Ex. 4 Mak Dep. Exs. 9-13, 17-23; Santos Decl. ¶¶ 3, 4.)  On or about June 22, 2004, Mak was informed she would be terminated if she had one more unscheduled

absence in the 12-month rolling year. (Hartzell Decl. Ex. 1 Mak Dep. I 93:16–94:10;
Hartzell Decl. Ex. 4 Mak Dep. Ex. 12.) Mak admits that she was counseled to apply
for FMLA/OFLA leave. (Hartzell Decl. Ex. 1 Mak Dep. I 94:12-17.) Mak then applied
for intermittent FMLA/OFLA leave for herself, her mother and her daughter.  Mak
wrote that she was applying for FMLA/OFLA leave "to cover days I have to take off."
She did not identify the duration of the intermittent leave request. (Hartzell Decl.
Ex. 4 Mak Dep. Ex. 6; Seger Decl. ¶ 8.)   Mak admitted that she applied for FMLA
to save her job. (Hartzell Decl. Ex. 1 Mak Dep. I 94:5-22.)

On July 28, 2004, Asante provided an "Employer Response" form from Vicky
Seger which informed plaintiff that her FMLA/OFLA leave for her own condition
would be conditionally approved pending the receipt of medical certification and, in
an email dated July 28, 2004, sent to Heather Freiheit, Vicky Seger instructed Mak
that she needed to fill out separate leave forms for her mother, husband, and
daughter; provide medical certifications for their medical conditions; and provide a
medical certification for her own medical condition. (Seger Decl. ¶¶ 8-11 & Exs. 4
& 6.)

FMLA/OFLA leave for Mak's mother and daughter was never approved.
(Seger Decl. ¶ 12; Hartzell Decl. Ex. 4 Mak Dep. Ex. 7.) After July 28, 2004, Mak
never turned in a cured medical certification for her medical condition. (Hartzell
Decl. Ex. 4 Mak Dep. Ex. 7.)

Between December 3, 2003, and November 8, 2004, Mak accumulated more than ten unscheduled absences, excluding any protected leaves of absence. At a minimum, her unscheduled absences occurred on December 3, 2003; January 12 & 19, 2004; February 28, 2004; March 15, 2004; April 12, 2004; May 4, 2004; June 5, 2004; July 31, 2004; and September 21 & 26, 2004. (Hartzell Decl. Ex. 4 Mak Dep. Exs. 11-13, 19, 21.) Information from Heather Freiheit but which was not verified by Levison, was that, between December 3, 2003, and her termination, Mak was tardy 13 times. (Hartzell Decl. Ex. 4 Mak Dep. Ex. 13; Levison Decl.)

On November 9, 2004, plaintiff expressed concern to Seger that she would be fired. (Seger Dep. 54:21-56:12). Seger assured her that no one was going to fire her for this and it was all probably a "miscommunication." (Oldham Decl. Ex. A Pl. Dep. I 183:3-184:7.) The decision to terminate Mak was made by November 12, 2004, at the latest. (Oldham Decl Ex. E Kurtz Dep. 27:19-28:11, 18-22; 30:23-31:7, 14-23.)

Mak denies that Heather Freiheit or anyone at Asante treated her adversely because she had a thyroid condition or because she took FMLA/OFLA leaves prior to January 2004. She admitted that employees and managers were familiar with the symptoms and treatments for Hashimoto's disease and knew about her relatives' medical conditions. (Hartzell Decl. Ex. 1 Mak Dep. I 27:19–30:24, 31:13-17, 61:5–66:18.)

The decision to terminate Mak was made by Heather Freiheit, Carman De Los Santos, and Julie Levison.  (Hartzell Decl. Ex. 4 Mak Dep. Ex. 15; Freiheit Decl. ¶ 4.) Mak believes that she was terminated because she challenged Heather Freiheit's authority, and that Freiheit's treatment of employees was based on favoritism – not disability. (Hartzell Decl. Ex. 1 Mak Dep. I 27:19–30:24; 31:13-17.)

## II. <u>LEGAL STANDARDS</u>

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56©); <u>Freeman v. Oakland Unified Sch. Dist.</u>, 291 F.3d 632, 636 (9th Cir. 2002).  The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact.  <u>Playboy Enters., Inc. v. Welles</u>, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986).  The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact.  <u>Id.</u>; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party.  <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056 (9th Cir. 1995).  All

reasonable inferences are drawn in favor of the non-movant. <u>Gibson v. County of Washoe</u>, 290 F.3d 1175, 1180 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. <u>THI-Hawaii, Inc. v. First Commerce Fin. Corp.</u>, 627 F.2d 991, 993-94 (9th Cir. 1980); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. <u>Devereaux</u>, 263 F.3d at 1076.

### III.  DISCUSSION

The court will first address the Plaintiff's claim for Violation of Family Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1).

### Federal Claim

Defendant contends that plaintiff was not entitled to take FMLA leave because she failed to follow the proper procedures for requesting FMLA leave despite clear instructions, past experience, and multiple notices of deficiencies, and because she did not have a qualifying leave event that prevented her from performing the functions of her job. Defendant contends that the evidence shows that plaintiff knew her employment was in jeopardy because of her attendance before she applied for intermittent leave on July 13, 2004. Plaintiff responds that the evidence supports an inference that defendant interfered with her rights under the FMLA because defendant failed to provide the required notices and information, and defendant intentionally concealed from her the fact that her absences were not covered under the FMLA until she had more than ten absences. Plaintiff contends that defendant should be estopped from asserting that she failed to provide adequate certification regarding the July 13, 2004, intermittent leave application because defendant's affirmative representations caused her to believe that her absences were covered. Defendant replies that the uncontested facts support judgment in its favor because the facts show that plaintiff knew that her job was in jeopardy in summer 2004; plaintiff applied for FMLA leave in order to protect her job after being encouraged by defendant to do so; plaintiff was familiar with the FMLA leave process; plaintiff admits that she received the leave packet from Asante; defendant's FMLA packet of forms contains all the required notices to employees,

a list of the employee obligations to obtain leave, and the consequences for failing

to complete the process; plaintiff provided defendant with an incomplete application

and medical certification; plaintiff was on notice that the note from Hoyecki was

insufficient and was given the opportunity to cure the defect; instead of curing the

defect in her FMLA application, plaintiff applied for and was granted a reduced work

schedule; and plaintiff exceeded ten unexcused absences by November 8, 2004.

Defendant replies that plaintiff's equitable estoppel argument fails as a matter of law

because the evidence shows that plaintiff was on notice as of July 29, 2004, and

thereafter that she was required to provide proper medical certification forms for

herself and her family members.

Statutory Requirements

The parties agree:

> To prevail on an FMLA interference claim, plaintiff must establish
> the following: (1) [s]he is an eligible employee, as defined in 29 U.S.C.
> § 2611(2); (2) [Asante] is an employer under the FMLA, as defined in
> 29 U.S.C. § 2611(4); (3) [S]he was entitled to take leave, as defined
> in 29 U.S.C. 2612 (a)(1); (4) [s]he gave notice of [her] intention to
> take leave, as defined in 29 U.S.C. § 2612(e)(1) and 29 C.F.R. §§
> 825.302-303; and (5) defendants denied [her] the benefits to which
> [s]he was entitled under the FMLA.

Price v. Multnomah County, 132 F.Supp2d 1290, 1297 (2001)(citations omitted).

The parties also agree that the elements of an OFLA claim are essentially the

same as for a FMLA claim, that plaintiff is an eligible employee, and that Asante is

an employer under FMLA.

Under the third element of an FMLA interference claim the issue is whether plaintiff was entitled to take leave as defined under 29 U.S.C. § 2612(a)(1). Plaintiff was entitled to leave "in order to care for . . . daughter, or parent, if such . . . daughter or parent has a serious health condition, or if she "was unable to perform the functions" of her position because of a serious health condition. 29 U.S.C. § 2612 (a)(1)©) and (D).

In this case, plaintiff applied for intermittent leave or an altered or reduced work schedule. (Hartzell Decl. Ex. 4 Mak Dep. Ex. 6.) Intermittent leave or a reduced leave schedule may be taken "when medically necessary". 29 U.S.C. § 2612(b)(1). The employer may require, as this employer did, that a request for leave be supported by a certification. 26 U.S.C. § 2913(a). Such certification is sufficient if it states:

> (1) the date on which the serious medical condition commenced;
> (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; . . .
> (6) . . . under section 2612(a)(1)(D) of this title, a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule; and
> (7) . . . under section 2612(a)(1)©) of this title, a statement of that the employee's intermittent leave or leave on a reduced leave schedule is necessary for the case of the . . . daughter, parent, or spouse who has a serious medical condition, or will assist in their recovery, and the expected duration and schedule of the intermittent leave or reduced

leave schedule.

29 U.S.C. § 2613 (b).

The Employee Leave of Absence Request signed by Mak stated in pertinent

part:

> I also understand that if I do not return the completed Medical
> Certification, if required, within 15 calendar days of leave approval, the
> beginning of my leave may be delayed and unscheduled absences may
> not be protected under the Family and Medical Leave laws.

(Hartzell Decl. Ex. 4 Mak Dep. Ex. 6; Oldham Decl. Ex. A Mak Dep. 75:1-7.)

Along with her FMLA request, Mak provided a "to whom it may concern" letter

from her health care provider, Patricia D. Hoyecki, ARNP, FNP, dated July 6, 2004,

which stated in pertinent part: "She currently has no personal health related

limitation of ability to participate in employment responsibilities." (Oldham Decl. Ex

D Seger Dep. 66:8-67:7; Hartzell Decl. Ex 4. Mak Dep. Ex. 8.)

Asante might have relied on this letter in which Hoyecki stated that the

plaintiff's health did not limit her ability to work and concluded that Mak was not

entitled to FMLA leave.  Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th

Cir. 1998).   Instead, Asante chose to conditionally approve Mak's FMLA request

pending receipt of a medical certification.

Mak admits receiving the Employer Response dated July 28, 2004, which

states in pertinent part:

"Leave Approved <u>Pending Medical Certification</u>."

(Oldham Decl. Mak Dep. 80:8-19; Seger Decl. ¶ 8 Ex. 4)(emphasis in original.)

Mak did not subsequently provide Asante with a medical certification at any time up to the time of her discharge. Even though the July 6, 2004, letter stated that she is not entitled to FMLA, Mak alleges that she was misled and believed that what she had already provided was adequate. However, Mak has not even provided a medical certification which contradicts her doctor's July 6, 2004, letter in opposition to Asante's motion for summary judgment. <u>Stoops</u>, 141 F.3d at 313. (FMLA claim failed because plaintiff could not obtain a medical opinion which showed his requested leave was for a "qualifying reason").

Interference claims are evaluated under a strict liability standard. <u>Price v. Multnomah County</u>, 132 F. Supp.2d 1290, 1297 (2001). An employee is due the benefit of FMLA "if the statutory requirements are satisfied". <u>Id</u>.

Here, the court finds that Mak has failed to met the statutory requirements as she has not shown that she was entitled to take FMLA leave.

<u>Equitable Estoppel</u>

Mak raises in response to Asante's motion for summary judgment that Asante should be equitably estopped from asserting that she failed to provide adequate certification.

Equitable estoppel requires that:

Findings and Recommendation - Page 15

(1) the party to be estopped must know the facts; (2) that party must intend that his conduct be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Ellenburg v. Brockway, Inc., 763 F.3d 1091, 1095 (9th Cir. 1985) (citations omitted).

The facts viewed in the light most favorable to Mak are:

1.     She had applied for and been approved for FMLA leave several times

       before during her employment with Asante. (Hartzell Decl. Ex. 1 Mak

       Dep. 53:12-56:22.)

2.     Mak knew that if she did not get medical certifications her leave

       would not be protected.  (Oldham Decl. Ex. A. Mak Dep. 69:7-

       10.)

3.     She knew that she needed a medical certification for her own

       serious health condition, and she knew that she needed a

       medical certificate for a family member with a serious health

       condition.  (Oldham Decl. Ex. A Mak Dep. 75:11-21.)

4.     On or about July 6, 2004, Mak called and told either Carol or Heather

       that her doctor wanted to know if a letter on Hoyecki's letterhead

       would be sufficient as she (Mak) didn't have a form, and they said yes

       it would.  (Oldham Decl. Ex. Mak Dep. 82:1-7.)

5.     Mak turned in her request for FMLA qualified leave on or about July 13,

2004.  (Hartzell Decl. Ex. 1 Mak Dep. 74:25-75:7 and Ex. 6.)

6.    Mak received the Employer Response dated July 28, 2004, stating that her leave was approved for her own serious health condition <u>pending Medical Certification</u>.  (Oldham Decl. Mak Dep. 80:8-19, Seger Decl. ¶ 8 Ex. 4.)

7.    At the end of August 2004, Mak asked for and received a reduction in her work hours of 10 hours a week in order to take care of family issues.  (Oldham Decl. Ex. A Mak Dep. 171:4-25.)

Mak states that she filled out her request for FMLA qualified leave and then went to get a letter from Hoyecki.  (Oldham Decl. Ex. A. Mak Dep. 81:12-22.)  Mak submits no evidence regarding when she actually submitted the July 6, 2004, letter. However, the letter from Hoyecki is dated July 6, 2004, and the request is dated July 13, 2004.  The dates of the two documents establish that Mak got the letter from Hoyecki before she filled out her request for leave, not after as she claims.

Mak states that she talked to Heather when she received the Employer Response and was told by Heather that Vicky didn't know whether Hoyecki's letter of July 6, 2004, had enough information to cover her own illness to qualify, and that Mak would be told if she needed to provide something more.  (Oldham Decl. Ex. A, Mak Dep. 80:12-81:4, 82:9-83:5.)

Mak asserts that she relied upon Heather's statement that the July 6, 2004,

letter was sufficient and therefore she was not given a chance to cure the deficiency.

Assuming that Mak meets the first two elements for equitable estoppel, Mak must show that she was ignorant of the true facts.

A plain reading of the July 6, 2004, letter is that Mak did not have a serious health problem which would necessitate her taking intermittent absences from work but rather the contemplated absences were to provide "health care support her dependents may require". (Oldham Decl. Ex. A Mak Dep. 82:20-83:5, Hartzell Decl. Ex. 4).

The court finds that Mak knew that the July 6, 2004, letter was not a medical certification for herself as the letter clearly states that Mak: "currently has no personal health related limitation of ability to participate in employment responsibilities" or for her relatives as Hoyecki was not their health care provider. The court finds that Mak knew the true facts.

Mak also must show that she relied on the statement that the July 6, 2004, letter was sufficient and thereby was injured because she was not given a chance to cure the deficiency.

As more fully set forth above, Mak has made no showing that she was injured by not being given a chance to cure the deficiency.  Mak has not provided a medical certification which contradicts Hoyecki's July 6, 2004, letter in opposition to Asante's

motion for summary judgment.  Stoops, 141 F.3d at 313. (FMLA claim failed because plaintiff could not obtain a medical opinion which showed his requested leave was for a "qualifying reason").

The court finds that Mak has not shown she was injured by not being given a chance to cure the deficiency as she was not entitled to FMLA leave.

The question on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986).  Here, no "fair-minded jury could return a verdict for the plaintiff on the evidence presented".  Id. at 252.

## State Claims

Plaintiff alleges claims for interference in violation of OFLA (ORS 659A.183), disability discrimination in violation of ORS 659.112(1), (2)(a)(e), disability discrimination in violation of ORS 659.112(1), (2)(d), discrimination in violation of ORS 659A.233, and wrongful discharge. The court may decline to exercise supplemental jurisdiction over a state claim if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3);  Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (citing San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998)).  The court may dismiss without prejudice supplemental state claims.  Brown v. Lucky Stores, Inc.  246 F.3d 1182, 1189 (9th Cir. 2001).

The Court recommends dismissal of plaintiff's federal claim against defendant over which it has original jurisdiction. The Court exercises its discretion to decline supplemental jurisdiction over plaintiff's remaining supplemental state claims. Plaintiff's supplemental state claims should be dismissed without prejudice to refiling in state court.

## IV.  RECOMMENDATION

Based on the foregoing, it is recommended that defendant's motion for summary judgment (#37) be granted as to plaintiff's FMLA claim; that plaintiff's supplemental state claims for interference in violation of OFLA (ORS 659A.183), disability discrimination in violation of ORS 659.112(1), (2)(a)(e), disability discrimination in violation of ORS 659.112(1), (2)(d), discrimination in violation of ORS 659A.233, and wrongful discharge, be dismissed without prejudice to refiling in state court; and that judgment be entered accordingly.

**This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a**

**response to the objections**. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this 2 6 day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

Findings and Recommendation - Page 21